**BRIAN BOYNTON**
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Civil Division
**SARAH S. WILSON**
Assistant Director
Office of Immigration Litigation, Civil Division
**ANTHONY J. MESSURI**
Trial Attorney
Office of Immigration Litigation, Civil Division
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 2044
(202) 616-2872
Anthony.Messuri@usdoj.gov

Attorneys for Respondents

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEVER ALBERTO MENDOZA LINARES,<br><br>        Petitioner,<br><br>   v.<br><br>MERRICK GARLAND, United States Attorney General, et al.,<br><br>        Respondents. | Case No.: 3:21-cv-01169-BEN-AHG<br><br><br>**ANSWER IN OPPOSITION TO PETITION FOR WRIT OF HABEAS CORPUS** |

i

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ....................................................... 1

STATEMENT OF THE RELEVANT FACTS ....................................................... 2

JURISDICTION AND STANDARD OF REVIEW ....................................................... 3

ARGUMENT ....................................................... 4

    I.     MORE THAN A CENTURY OF SUPREME COURT PRECEDENT, AND MOST RECENTLY *THURAISSIGIAM*, CONFIRMS MR. MENDOZA'S DETENTION UNDER 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) DOES NOT VIOLATE THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE ....................................................... 4

    II.    MR. MENDOZA'S DETENTION DOES NOT VIOLATE THE EIGHTH AMENDMENT BECAUSE, AS AN INADMISSIBLE ARRIVING NONCITIZEN SEEKING INITIAL ENTRY, HE HAS NO CONSTIUTIONAL RIGHTS AND, ALTERNATIVELY, AS A CIVIL IMMIGRATION DETAINEE, THE EIGHTH AMENDMENT IS NOT APPLICABLE TO HIM ....................................................... 9

    III.    MR. MENDOZA'S CONDITIONS OF CONFINEMENT CLAIMS ARE NOT COGNIZABLE VIA A 28 U.S.C. § 2241 HABEAS PETITION .. 13

    IV.    THE COURT SHOULD DISMISS ALL NAMED RESPONDENTS IN THIS CASE OTHER THAN CHRISTOPHER J. LAROSE ............................ 15

CONCLUSION ....................................................... 17

3:21-cv-01169-BEN-AHG

# TABLE OF AUTHORITIES

## CASES

*Agyeman v. INS,*
   296 F.3d 871 (9th Cir. 2002) ........................................................................ 11

*Ali v. Brott,*
   770 F. App'x 298 (8th Cir. 2019) ................................................................. 16

*Alvarez v. Larose,*
   445 F.Supp.3d 861 (S.D. Cal. 2020) ........................................................... 15

*Badea v. Cox,*
   931 F.2d 573 (9th Cir. 1991) .......................................................................... 2

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
   403 U.S. 388 (1971) ...................................................................................... 13

*Bolante v. Keisler,*
   506 F.3d 618 (7th Cir. 2007) ........................................................................ 11

*Briseno v. I.N.S.,*
   192 F.3d 1320 (9th Cir. 1999) ...................................................................... 11

*Calderon v. Wilcox,*
   374 F.Supp.3d 1024 (W.D. Wash. 2019) ..................................................... 14

*Carlson v. Landon,*
   342 U.S. 524 (1952) ................................................................................ 11, 12

*Chester v. Carr,*
   2018 WL 5862823 (C.D. Cal. July 10, 2018) .............................................. 14

*Crawford v. Bell,*
   599 F.2d 890 (9th Cir. 1979) ........................................................................ 13

*Demore v. Kim,*
   538 U.S. 510 (2003) ........................................................................................ 8

*Department of Homeland Security v. Thuraissigiam,*
   140 S.Ct. 1959 (2020) ....................................................................... 1, passim

*Exxon Mobil Corp. v. Allopath Servs., Inc.,*
   545 U.S. 546 (2005) ........................................................................................ 3

*Fiorito v. Entzel*,
    829 F. App'x 192 (9th Cir. 2020).......................................................... 14

*Fong Yue Ting v. United States*,
    149 U.S. 698 (1893) ................................................................. 11, 12

*Galvan v. Press*,
    347 U.S. 522 (1954) .......................................................................... 10

*Gavilanes-Curiel v. Archambeault*,
    2021 WL 4895222 (S.D. Cal. Sept. 21, 2021) .................................. 15

*Gonzales Garcia v. Rosen*,
    513 F.Supp.3d 329 (W.D.N.Y. 2021) ................................................. 6

*Gonzales-Corrales v. I.C.E.*,
    522 F. App'x 619 (11th Cir. 2013).................................................... 16

*Harisiades v. Shaughnessy*,
    342 U.S. 580 (1952) ......................................................................... 11

*Hill v. McDonough*,
    547 U.S. 573 (2006) ......................................................................... 13

*I.N.S. v. Lopez-Mendoza*,
    468 U.S. 1032 (1984) ............................................................. 2, 11, 12

*Jackson v. Indiana*,
    406 U.S. 715 (1972) ......................................................................... 8, 9

*Jennings v. Rodriguez*,
    138 S.Ct. 830 (2018) .................................................................... 5, 12

*Jones v. Blanas*,
    393 F.3d 918 (9th Cir. 2004) ........................................................... 14

*Kholyavskiy v. Achim*,
    443 F.3d 946 (7th Cir. 2006) ........................................................... 16

*Kleindienst v. Mandel*,
    408 U.S. 753 (1972) ......................................................................... 10

*Lambert v. Blodgett*,
    393 F.3d 943 (9th Cir. 2004) ............................................................. 4

iv

*Landon v. Plasencia,*
   459 U.S. 21 (1982) ................................................................. 2, 6, 10

*Lockhart v. Allen,*
   2017 WL 2364353 (S.D. Cal. May 30, 2017) ................................ 14

*Martinez v. LaRose,*
   980 F.3d 551 (6th Cir. 2020) ................................................... 7

*Nelson v. Campbell,*
   541 U.S. 637 (2004) .................................................. 2, 13, 14, 15

*Nettles v. Grounds,*
   830 F.3d 922 (9th Cir. 2016) ................................... 13, 14, 15

*Nishimura Ekiu v. U.S.,*
   12 S.Ct. 336 (1892) .................................................... 6

*Petgrave v. Aleman,*
   529 F.Supp.3d 665 (S.D. Tex. 2021) ........................... 6

*Potosme v. Garland,*
   2022 WL 993644 (W.D. Wash. Mar. 1, 2022) ................ 9

*Preiser v. Rodriguez,*
   411 U.S. 475 (1973) .................................................. 13

*Raghav v. Wolf,*
   522 F.Supp.3d 534 (D. Ariz. 2021) ............................. 16

*Reno v. American-Arab Anti-Discrimination Comm.,*
   525 U.S. 471 (1999) .................................................. 11

*Rodriguez Figueroa v. Garland,*
   535 F.Supp.3d 122 (W.D.N.Y. 2021) ......................... 6

*Rumsfeld v. Padilla,*
   542 U.S. 426 (2004) .................................................. 16

*Shaughnessy v. United States ex rel. Mezei,*
   73 S.Ct. 625 (1953) .......................................... 5, 6, 7

*Shook v. Apker,*
   472 F. App'x 702 (9th Cir. 2012) ............................... 14

v

*Snook v. Wood*,
89 F.3d 605 (9th Cir. 1996)................................................................. 4

*St. Charles v. Barr*,
514 F.Supp. 570 (W.D.N.Y. 2021) ................................................. 6, 16

*Strouse v. Shartle*,
2017 WL 2224926 (D. Ariz. May 22, 2017) ................................... 14

*Tazu v. Att'y Gen. United States*,
975 F.3d 292 (3d Cir. 2020) .............................................................. 7

*Thatikonda v. U.S. Department of Homeland Security*,
2022 WL 425013 (D. D.C. Feb. 11, 2022) ..................................... 10

*Torres-Torres v. Barr*,
837 F. App'x 430 (9th Cir. 2020)..................................................... 11

*Tucker v. Carlson*,
925 F.2d 330 (9th Cir. 1991) ..................................................... 13, 15

*U.S. ex rel. Knauff v. Shaughnessy*,
70 S.Ct. 309 (1950) ..................................................................... 6, 10

*Wong Wing v. United States*,
163 U.S. 228 (1896) ........................................................................ 10

*Yagao v. Figueroa*,
2019 WL 1429582 (S.D. Cal. Mar. 29, 2019)................................... 7

## <u>STATUTES</u>

### Immigration and Nationality Act of 1952, as amended:

8 U.S.C. § 1182(a)(7)(A)(i) ........................................................... 2, 4

8 U.S.C. § 1182(d)(5)......................................................................... 5

8 U.S.C. § 1225(b) .......................................................................... 5, 7

8 U.S.C. § 1225(b)(1)................................................................... 2, 4, 5

8 U.S.C. § 1225(b)(1)(A)(i) ...............................................................4

8 U.S.C. § 1225(b)(2) ............................................................................................... 5

8 U.S.C. § 1225(b)(1)(B)(iii)(I) ............................................................................... 4

8 U.S.C. § 1225(b)(1)(B)(iii)(III) ............................................................................ 4

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ........................................................................ 1, 4

28 U.S.C. § 2241 ..................................................................................... 2, 13, 14, 15

28 U.S.C. § 2241(c)(3) ............................................................................................. 4

28 U.S.C. § 2242 ............................................................................................... 15, 16

28 U.S.C. § 2243 ..................................................................................................... 15

Title 28 U.S.C. § 2241 ......................................................................................... 4, 14

## **<u>REGULATIONS</u>**

8 C.F.R. § 1236 ........................................................................................................ 3

3:21-cv-01169-BEN-AHG

# INTRODUCTION

Petitioner Hever Alberto Mendoza Linares (Mr. Mendoza) has filed a Petition for Writ of Habeas Corpus (Petition) with the Court alleging that his detention in civil immigration custody violates the Fifth Amendment's Due Process Clause and the Eighth Amendment. *See generally* Petition, ECF No. 1. As for relief, he requests that the Court, based on certain factors and burdens of proof of his choosing, determine that his detention is not justified and order his release or order his release within thirty days unless he receives a custody hearing before an immigration judge (IJ). Petition, at ¶¶ 4-5. For the reasons set forth below, in conjunction with those contained in the attached Exhibits, the Court should deny the Petition.[1]

First, pursuant to "more than a century of [Supreme Court] precedent", the Court should reject Mr. Mendoza's claim that his detention violates the Fifth Amendment's Due Process Clause because individuals like him, inadmissible arriving noncitizens seeking initial entry, have no rights other than those provided by statute and the statute he is detained pursuant to does not provide for a custody determination by this Court or a custody hearing before an IJ. *See Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959, 1982 (2020) (collecting cases); *id.* at 1983 ("[A][] [noncitizen] in respondent's position has only those rights regarding admission that Congress has provided by statute."); 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Second, while Mr. Mendoza claims that his detention violates the Eighth Amendment, the Court should reject this challenge as well because inadmissible arriving noncitizens seeking initial entry do not have any constitutional rights and, regardless, the Eighth Amendment does not apply as

---

[1] The attached Exhibits are copies of records maintained by or at the direction Department of Homeland Security (DHS), court records, or other publically available documents, a list of which is contained in the adjoining Table of Exhibits. The pages of these records have been numbered in the upper right-hand corner as a matter of convenience and certain portions of these records have been redacted pursuant to applicable laws, rules, privileges, and regulations.

immigration detention is civil in nature, not criminal, and does not amount to punishment. *See Landon v. Plasencia*, 459 U.S. 21, 32 (1982) ("This Court has long held that an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative"); *see generally I.N.S. v. Lopez-Mendoza*, 468 U.S. 1032, 1038 (1984) ("Consistent with the civil nature of the proceeding, various protections that apply in the context of a criminal trial do not apply in a deportation hearing."). As an additional matter, while Mr. Mendoza grafts conditions of confinement claims onto his Fifth Amendment and Eighth Amendment challenges, such claims are not cognizable via a 28 U.S.C. § 2241 habeas petition. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004) ("[C]onstitutional claims that merely challenge the conditions of a prisoner's confinement, […], fall outside of that [habeas] core and may be brought pursuant to [a civil rights action] in the first instance."); *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement. A civil rights action, in contrast, is the proper method of challenging 'conditions of ... confinement.'") (internal citations omitted). Accordingly, the Court should deny the Petition.

## STATEMENT OF THE RELEVANT FACTS

Mr. Mendoza is a native and citizen of El Salvador. Ex. 1. He has outstanding warrants for his arrest in El Salvador for Violation of Protective Order, Murder, and Rape. Exs. 1-3.

On February 10, 2020, Mr. Mendoza entered the United States without being inspected or admitted by an Immigration Officer by jumping over the international border fence. Ex. 4. He was taken into DHS custody that same day. Ex. 1.

On February 12, 2020, the DHS determined that Mr. Mendoza was inadmissible to the United States under 8 U.S.C. § 1182(a)(7)(A)(i) and issued an expedited order of removal against him pursuant to 8 U.S.C. § 1225(b)(1). Ex. 4. He thereafter had a

2

credible fear interview and an asylum officer determined that he had not established a reasonable fear of persecution or torture if he were to return to El Salvador.  Ex. 5.

Mr. Mendoza requested an IJ review the negative credible fear determination. Ex. 5.  On May 27, 2020, an IJ ordered that the negative credible fear determination be affirmed and entered a final order of removal against Mr. Mendoza.  Ex. 6.  Mr. Mendoza thereafter contested the final order of removal by filing a petition for review with the Ninth Circuit and he was subsequently granted a stay of removal.  Ex. 7.  The case is fully briefed and was argued in December 2021.  Ex. 7.  As of today, his petition for review remains pending with the Ninth Circuit.  Ex. 7.

While in DHS custody, Mr. Mendoza requested a custody redetermination pursuant to 8 C.F.R. § 1236.  ECF No. 1-5.  On January 15, 2021, an IJ issued an order denying his request for a change in custody status on the basis that the immigration court lacked jurisdiction over such a request.  ECF No. 1-5.  Mr. Mendoza filed a motion to reconsider the IJ's custody redetermination order and, on March 1, 2021, an IJ issued an order denying the motion.  ECF No. 1-6.  Mr. Mendoza appealed the IJ's order and on October 20, 2021, the Board of Immigration Appeals (BIA) issued an order dismissing the appeal. Ex. 8.

In addition to requesting a custody redetermination before an IJ while in DHS custody, Ms. Mendoza has also filed "multiple parole requests" with the DHS.  Petition, at ¶ 17.  All of these requests have been denied thus far.  Petition, at ¶¶ 17-20, 30, 35; ECF Nos. 1-4, 1-5.  On June 25, 2021, Mr. Mendoza filed this Petition.  ECF No. 1.

## JURISDICTION AND STANDARD OF REVIEW

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allopath Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal

3

3:21-cv-01169-BEN-AHG

quotations omitted).  "[T]he scope of habeas has been tightly regulated by statute, from the Judiciary Act of 1789 to the present day." *Thuraissigiam*, 140 S.Ct. at 1974 n.20.

Title 28 U.S.C. § 2241 provides district courts with jurisdiction to hear federal habeas petitions.  In order to warrant a grant of writ of habeas corpus, the burden is on the petitioner to prove that his or her custody is in violation of the Constitution, laws, or treaties of the United States.  *See* 28 U.S.C. § 2241(c)(3); *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004); *Snook v. Wood*, 89 F.3d 605, 609 (9th Cir. 1996).

## **ARGUMENT**

### I.  **MORE THAN A CENTURY OF SUPREME COURT PRECEDENT, AND MOST RECENTLY *THURAISSIGIAM*, CONFIRMS MR. MENDOZA'S DETENTION UNDER 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) DOES NOT VIOLATE THE FIFTH AMENDMENT'S DUE PROCESS CLAUSE**

Title 8 U.S.C. § 1225(b)(1) sets forth expedited removal proceedings for a subset of individuals who are inadmissible arriving noncitizens, like Mr. Mendoza, Ex. 4.  A noncitizen who is subject to 8 U.S.C. § 1225(b)(1) proceedings is ordered removed "without further hearing or review", unless he or she indicates an intent to apply for asylum or a fear of persecution.  8 U.S.C. § 1225(b)(1)(A)(i).  If an asylum officer "determines that a[] [noncitizen] does not have a credible fear of persecution, the officer shall order the [noncitizen] removed from the United States without further hearing or review."  8 U.S.C. § 1225(b)(1)(B)(iii)(I).  A noncitizen may, however, seek review of an asylum officer's negative credible fear determination before an IJ.  8 U.S.C. § 1225(b)(1)(B)(iii)(III).

Mr. Mendoza is currently detained by DHS pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) as he is an arriving noncitizen inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i) and was found to have no credible fear of persecution by an asylum officer and IJ.  Exs. 4-6.  8 U.S.C. § 1225(b)(1)(B)(iii)(IV) states:

4

**(IV) Mandatory detention**
Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.

In *Jennings v. Rodriguez*, 138 S.Ct. 830, 842-46 (2018), the Supreme Court evaluated the proper interpretation of 8 U.S.C. § 1225(b).  The Supreme Court stated that "[r]ead most naturally, [8 U.S.C.] §§ 1225(b)(1) and (b)(2) [] mandate detention of applicants for admission until certain proceedings have concluded." *Id.* at 842.  The Supreme Court noted that neither 8 U.S.C. § 1225(b)(1) nor § 1225(b)(2) "impose[] any limit on the length of detention" and "neither § 1225(b)(1) nor § 1225(b)(2) say[] anything whatsoever about bond hearings." *Id.*  The Supreme Court added that the sole means of release for noncitizens detained pursuant to 8 U.S.C. §§ 1225(b)(1) or (b)(2) prior to removal from the United States is temporary parole at the discretion of the Attorney General under 8 U.S.C. § 1182(d)(5).  *Id.* at 844 ("That express exception to detention implies that there are no other circumstances under which [noncitizens] detained under [8 U.S.C.] § 1225(b) may be released.").  The Supreme Court concluded:  "In sum, [8 U.S.C.] §§ 1225(b)(1) and (b)(2) mandate detention of [noncitizens] throughout the completion of applicable proceedings[.]" *Id.* at. 845.

In Mr. Mendoza's Petition, at ¶ 60, he concedes that pursuant to *Jennings* statutory interpretation of 8 U.S.C. § 1225(b) he is not entitled to the relief, Petition, at ¶ ¶ 4-5, he seeks from the Court.  However, he claims that, despite the statutory prohibition on such relief, the Fifth Amendment's Due Process Clause requires that he be afforded a bond hearing due to his prolonged detention.  Petition, at ¶¶ 62-64, 72, 77-80, 89.  Mr. Mendoza's due process claim, however, is foreclosed by the same statutory constraints he concedes does not afford him the relief he requests from the Court.

In *Shaughnessy v. United States ex rel. Mezei*, 73 S.Ct. 625, 627 (1953), a noncitizen in exclusion proceedings filed a habeas petition claiming that his prolonged

5

detention without a hearing violated his constitutional rights and he sought a bond hearing for relief.  The Supreme Court rejected the petition, concluding that the noncitizen's continued detention did not deprive him of any constitutional right, stating:  "[A]n alien on the threshold of initial entry stands on a different footing: 'Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.'" *Id.* at 629, 631.

In *Thuraissigiam*, 140 S.Ct. at 1964, 1981-83, the Supreme Court once again addressed the due process rights of individuals like Mr. Mendoza, inadmissible arriving noncitizens seeking initial entry into the United States.  The Supreme Court stated that such individuals have no due process rights "other than those afforded by statute."  *Id.* at 1964; *id.* at 1983 ("[A][] [noncitizen] in respondent's position has only those rights regarding admission that Congress has provided by statute.").  In its opinion, the Supreme Court noted that its determination was supported by "more than a century of precedent." *Id.* at 1982 (citing *Nishimura Ekiu v. U.S.*, 12 S.Ct. 336 (1892); *U.S. ex rel. Knauff v. Shaughnessy*, 70 S.Ct. 309 (1950); *Mezei*, 73 S.Ct. 625; *Landon*, 103 S.Ct. 321).

Since the Supreme Court's decision in *Thuraissigiam*, numerous published decisions have been issued acknowledging *Thuraissigiam*'s impact on the precise Fifth Amendment Due Process Clause issue raised in this Petition:  Does a noncitizen detained under 8 U.S.C. § 1225(b)(1) have a due process right to release or a bond hearing after being detained for a certain period of time?  The answer is no.  *See Rodriguez Figueroa v. Garland*, 535 F.Supp.3d 122, 126-27 (W.D.N.Y. 2021); *Gonzales Garcia v. Rosen*, 513 F.Supp.3d 329, 336 (W.D.N.Y. 2021); *St. Charles v. Barr*, 514 F.Supp. 570, 579 (W.D.N.Y. 2021); *Petgrave v. Aleman*, 529 F.Supp.3d 665, 667 (S.D. Tex. 2021).

Recently, in *Guerrier v. Garland*, 18 F.4th 304, 310 (9th Cir. 2021), the Ninth Circuit discussed the ramifications of *Thuraissigiam* and therein stated:  "[I]n the expedited removal context, a petitioner's due process rights are coextensive with the statutory rights Congress provides."  *See also Rauda v. Jennings*, 8 F.4th 1050, 1058

6

(9th Cir. 2021) ("Congress has already balanced the amount of due process available to petitioners with the executive's prerogative to remove individuals, and we decline to expand judicial review beyond the parameters set by Congress.").  Other Circuit Courts have agreed.  *See Tazu v. Att'y Gen. United States*, 975 F.3d 292, 300 (3d Cir. 2020) ("Tazu's constitutional right to habeas likely guarantees him no more than the relief he hopes to avoid—release into 'the cabin of a plane bound for [Bangladesh].'"); *Martinez v. LaRose*, 980 F.3d 551, 552 (6th Cir. 2020) ("When an alien attempts to cross our border illegally, the Due Process Clause does not require the government to release him into the United States.  Instead, the government may detain him while it arranges for his return home.").

Simply put, Mr. Mendoza is detained pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) which mandates, absent discretionary parole afforded by the Attorney General, that he remain in detention "until removed."  As the statutory authority he is detained under does not afford him a right to a determination by this Court as to whether his release is warranted nor a right to a bond hearing before an IJ, the Court should reject his claim that his prolonged detention violates the Fifth Amendment's Due Process Clause and deny his requested relief.  *See Thuraissigiam*, 140 S.Ct. at 1964, 1983; *Mezei*, 73 S.Ct. at 629, 631; *Guerrier*, 18 F.4th at 310.

The Fifth Amendment Due Process Clause arguments that Mr. Mendoza relies on in support of his claim are meritless and do not establish that he warrants the relief he seeks. In support of his contention that he warrants a bond hearing, he states that "[g]uided by basic notions of due process gleaned from recent Supreme Court and Ninth Circuit case law, the majority of courts across the country have consistently held that an unreasonably prolonged detention under 8 U.S.C. § 1225(b) without an individualized bond hearing violates due process."  Petition, at ¶ 78.  He proceeds to cite *Yagao v. Figueroa*, 2019 WL 1429582, *2 (S.D. Cal. Mar. 29, 2019) ("[T]he Court agrees with the many district courts finding that prolonged detention without a bond hearing likely violates due process.").

7

Petition, at ¶ 78.  Putting aside the fact that the case and parenthetical he cites do not support his proposition, this statement, along with the Petition as a whole, do not refute *Thuraissigiam* or the vast Supreme Court precedent stating that the due process rights of inadmissible arriving noncitizens seeking initial entry are limited by statute; a statute which, in this case, Mr. Mendoza concedes pursuant to *Jennings* does not entitle him to a a bond hearing, Petition, at ¶ 60.  In fact, it bears noting that while Mr. Mendoza cites to *Thuraissigiam* and proceeds to acknowledge the Supreme Court's Suspension Clause analysis and determination, he does not do the same for the Due Process Clause.  Petition, at ¶ 14.

Turning to the Supreme Court cases that Mr. Mendoza relies on in support of his claim that the Fifth Amendment's Due Process Clause requires he be afforded a bond hearing, he points to:  Justice Breyer's dissent in *Jennings*, Justice Kennedy's concurrence in *Demore v. Kim*, 538 U.S. 510 (2003), and *Jackson v. Indiana*, 406 U.S. 715, 733 (1972).  Petition, at ¶¶ 62-63.  These cases are easily distinguishable from Mr. Mendoza's case.  As to Justice Breyer's dissent in *Jennings*, this dissenting opinion does not trump more than a century of Supreme Court precedent stating that an inadmissible arriving noncitizen seeking initial entry into the United States, like Mr. Mendoza, has only those rights set forth in statute and provided by Congress.  *See Thuraissigiam*, 140 S.Ct. at 1964, 1983.  As to Justice Kennedy's concurrence in *Demore*, the same rebuttal holds and a review of Justice Kennedy's concurring sentence relied upon by Mr. Mendoza, when set forth in its entirety, neither supports the proposition he raises in his Petition nor advances his claim.  *See Demore*, 538 U.S. at 533 ("Since the Due Process Clause prohibits arbitrary deprivations of liberty, a *lawful permanent resident* alien such as respondent *could be* entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified.") (emphasis added); *see also id.* at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").  As to *Jackson*, the same rebuttal again holds and a

8

review of the due process holding in that case, involving a United States citizen, demonstrates that the circumstances in this Petition are markedly different. *See Jackson*, 406 U.S. at 731 ("[W]e also hold that Indiana's indefinite commitment of a criminal defendant solely on account of his incompetency to stand trial does not square with the Fourteenth Amendment's guarantee of due process.").

In sum, as an inadmissible arriving noncitizen seeking initial entry into this country, Mr. Mendoza's rights begin and end with the statute. The statutory authority he is detained under does not afford him a right to a custody determination by this Court nor a right to a custody hearing before an IJ. As such, the Court should reject Mr. Mendoza's claim that his prolonged detention violates the Fifth Amendment Due Process Clause.[2] *See* 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); *Thuraissigiam*, 140 S.Ct. at 1964, 1983.

## II.   MR. MENDOZA'S DETENTION DOES NOT VIOLATE THE EIGHTH AMENDMENT BECAUSE, AS AN INADMISSIBLE ARRIVING NONCITIZEN SEEKING INITIAL ENTRY, HE HAS NO CONSTITUTIONAL RIGHTS AND, ALTERNATIVELY, AS A CIVIL IMMIGRATION DETAINEE, THE EIGHTH AMENDMENT IS NOT APPLICABLE TO HIM

Mr. Mendoza's Eighth Amendment claim, Petition, at ¶¶ 90-94, fails for the same reason his Fifth Amendment Due Process Clause claim does. Simply put, an inadmissible

---

[2]  In Mr. Mendoza's Petition, at ¶¶ 82-87, he also alleges a second Fifth Amendment Due Process Clause violation: that he has been subjected to punitive conditions of confinement by Respondents. As Mr. Mendoza is only entitled to those rights set forth by statute and the statute, 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), contains no right of action as to conditions of confinement nor entitles him to any particular conditions of confinement, this secondary challenge should also be rejected. *See Thuraissigiam*, 140 S. Ct. at 1964, 1982-83; *Potosme v. Garland*, 2022 WL 993644, *2 (W.D. Wash. Mar. 1, 2022) ("Nor does the Court have jurisdiction to consider constitutional claims associated with expedited removal proceedings.") (citing *Thuraissigiam*, 140 S.Ct. at 1966-67, 1982-83; *Guerrier*, 18 F.4th at 313). Alternatively, in the event the Court determines this challenge is not barred by this statutory authority, in conjunction with *Thuraissigiam*, this claim fails for another wholly independent basis as well as set forth in Section III.

arriving noncitizen seeking initial entry into this country, like Mr. Mendoza, "requests a privilege and has no constitutional rights regarding his application[.]"  *See Plasencia*, 459 U.S. at 32; *Knauff*, 70 S.Ct. at 312 ("At the outset we wish to point out that an alien who seeks admission to this country may not do so under any claim of right."); *Wong Wing v. United States*, 163 U.S. 228, 231 (1896) ("[T]he right to exclude ... aliens, ... absolutely or upon certain conditions, in war or in peace, is an inherent and inalienable right of every sovereign and independent nation.").  The Supreme Court stated, as far back as nearly fifty years ago, that the "general reaffirmations of this principle have been legion." *Kleindienst v. Mandel*, 408 U.S. 753, 765-66 (1972).

Instead, such an arriving noncitizen seeking initial entry has "only those rights regarding admission that Congress has provided by statute."  *See Thuraissigiam*, 140 S.Ct. at 1983; *Kleindienst*, 408 U.S. at 767 ("[T]hat the formulation of these policies is entrusted exclusively to Congress has become about as firmly embedded in the legislative and judicial tissues of our body politic as any aspect of our government.") (quoting *Galvan v. Press*, 347 U.S. 522, 531 (1954)).  As Mr. Mendoza has no constitutional rights, his claim that his detention violates the Eighth Amendment should be rejected.  *See Thuraissigiam*, 140 S.Ct. at 1983; *Plasencia*, 459 U.S. at 32; *Knauff*, 70 S.Ct. at 312; *Thatikonda v. U.S. Department of Homeland Security*, 2022 WL 425013, *4 (D. D.C. Feb. 11, 2022) ("There are material differences in the rights available to 'alien[s] seeking initial admission'—who 'ha[ve] no constitutional rights regarding [their] application[s]'—and those who have "gain[ed] admission to our country and begin[ ] to develop the ties that go with permanent residence.").

Alternatively, Mr. Mendoza's Eighth Amendment claims, based on allegations that his conditions of confinement constitute cruel and unusual punishment and that his prolonged detention without the right to bail violates the Excessive Bail Clause, Petition at ¶¶ 91-94, fail on other grounds as well.  As to his claim that his detention without the right to bail violates the Excessive Bail Clause, Petition at ¶ 93, Mr. Mendoza is in civil

3:21-cv-01169-BEN-AHG

immigration detention, not criminal detention.  Petition at ¶¶ 1-2; *see Harisiades v. Shaughnessy*, 342 U.S. 580, 594 (1952) ("Deportation, however severe its consequences, has been consistently classified as a civil rather than a criminal procedure."); *Agyeman v. INS*, 296 F.3d 871, 886 (9th Cir. 2002) ("It is well established that deportation proceedings are civil, rather than criminal, in nature.").  This is a critical distinction because where detention is civil in nature, the Eighth Amendment simply does not apply. *See generally Lopez-Mendoza*, 468 U.S. at 1038.  Moreover, the Supreme Court has specifically held that the Eighth Amendment's Excessive Bail Clause does not compel the allowance of bail in immigration cases.  *See Carlson v. Landon*, 342 U.S. 524, 545 (1952); *id.* ("The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country."); *id.* ("[T]he very language of the [Eighth] Amendment fails to say all arrests must be bailable."); *see also Bolante v. Keisler*, 506 F.3d 618, 619 (7th Cir. 2007) ("[T]he [Supreme] Court has never held that persons detained in civil proceedings, such as deportation (now called removal) proceedings, are entitled to release on bail.").

As to Mr. Mendoza's claim that his detention constitutes cruel and unusual punishment under the Eighth Amendment, Petition at ¶¶ 91-92, the Supreme Court has long held that deportation is not a punishment and thus not subject to Eighth Amendment protections.  *See Carlson*, 342 U.S. at 537 ("Deportation is not a criminal proceeding and has never been held to be punishment."); *Fong Yue Ting v. United States*, 149 U.S. 698, 730 (1893); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 491 (1999) ("While the consequences of deportation may assuredly be grave, they are not imposed as a punishment ...").  The Ninth Circuit has held the same.  *See Torres-Torres v. Barr*, 837 F. App'x 430, 433 (9th Cir. 2020) ("Binding precedent makes clear that 'deportation is not cruel and unusual punishment even though the 'penalty' may be severe.'") (citing *Briseno v. I.N.S.*, 192 F.3d 1320, 1323 (9th Cir. 1999)).

In support of his Eighth Amendment cruel and unusual punishment claim, Mr. Mendoza premises his argument on being a criminal prisoner in criminal detention. Petition, at ¶ 91.  Mr. Mendoza, however, is not a criminal prisoner in criminal detention. Instead, as he concedes at the very start of his Petition, at ¶¶ 1-2, he is in civil immigration custody pending removal proceedings.  As noted in the previous two paragraphs, this is a critical distinction because when a noncitizen is in civil immigration detention pending the outcome of his removal proceedings, the Eighth Amendment simply does not apply.  *See Lopez-Mendoza*, 468 U.S. at 1038; *Carlson*, 342 U.S. at 537; *Fong Yue Ting*, 149 U.S. at 730.

In support of his Eighth Amendment Excessive Bail Clause claim, Mr. Mendoza cites to Justice Breyer's dissenting opinion in *Jennings*, 138 S.Ct. at 871, for the proposition that the "categorical denial of bail to certain noncitizens violates the right to bail encompassed by the Eighth Amendment."  Petition, at ¶ 93.  This assertion, however, misreads the opinion.  Critically, Justice Breyer rested his dissent on the Fifth Amendment's Due Process Clause, not the Eighth Amendment's Excessive Bail Clause. *See Jennings*, 138 S.Ct. at 862 (Breyer, J. dissenting) ("The Due Process Clause foresees eligibility for bail as part of 'due process.'").  Furthermore, as noted above, the Supreme Court has long held that the Eighth Amendment's Excessive Bail Clause does not entitle every detained individual or class of individuals the right to bail.  *See Carlson*, 342 U.S. at 545-46.

In short, Mr. Mendoza fails to point to any binding precedent which states that the Eighth Amendment applies to matters involving civil immigration detainees, let alone detainees like him who are inadmissible arriving noncitizens seeking initial entry into the United States.  *See generally* Petition.  Thus, the Court should deny Mr. Mendoza's Eighth Amendment claim.

### III.   MR. MENDOZA'S CONDITIONS OF CONFINEMENT CLAIMS ARE NOT COGNIZABLE VIA A 28 U.S.C. § 2241 HABEAS PETITION

As noted above, Mr. Mendoza latches conditions of confinement claims, Petition, at ¶¶ 82-87, 91-92, onto his Fifth Amendment Due Process Clause and Eighth Amendment prolonged detention claims.  Such claims may (and should) be rejected for the reasons provided in those subsections, Respts' Answer, at pp. 4-12, but they also may (and should) be rejected on another wholly independent basis:  his claims are not cognizable via a 28 U.S.C. § 2241 habeas petition.

The Supreme Court has stated that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody[.]"  *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  In contrast, a detainee raising constitutional claims challenging the conditions or circumstances of confinement should bring a civil rights action.  *See Nelson*, 541 U.S. at 643; *Hill v. McDonough*, 547 U.S. 573, 579 (2006) ("[a]n inmate's challenge to the circumstances of his confinement" must be brought through a civil rights action).

The Ninth Circuit has "long held that prisoners may not challenge mere conditions of confinement in habeas corpus."  *Nettles v. Grounds*, 830 F.3d 922, 933 (9th Cir. 2016) (en banc) (citing *Crawford v. Bell*, 599 F.2d 890, 891-92 (9th Cir. 1979)).  Instead, the appropriate remedy for a federal prisoner to raise a challenge to his conditions of confinement lies in a civil rights action under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *See Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991).

In asserting a Fifth Amendment violation, Mr. Mendoza contends that his conditions of confinement are punitive, alleging various misdeeds by detention officials against him, including:  failing to adequately protect him against other detainees, taking away his commissary, placing him in solitary confinement, retaliating against him for exercising his rights, unnecessary transfers, blocking his access to counsel, and declining to provide him timely medical care.  Petition, at ¶¶ 82-87.  As set forth in the two previous

paragraphs, however, such claims are not cognizable via a 28 U.S.C. § 2241 habeas petition because they are, as he readily concedes, challenges to his conditions of confinement, not to the fact or duration of his confinement.[3]  *See Nelson*, 541 U.S. at 643; *Nettles*, 830 F.3d at 933.  In fact, many of the negative actions he specifically points to in support of his claim, e.g. placement in solitary confinement, have been found by the Ninth Circuit and courts within its jurisdiction to not be cognizable via a 28 U.S.C. § 2241 habeas petition.  *See Fiorito v. Entzel*, 829 F. App'x 192, 193-94 (9th Cir. 2020) (affirming dismissal of a 28 U.S.C. § 2241 habeas petition premised on claim that prison officials issued false incident report against petitioner); *Shook v. Apker*, 472 F. App'x 702, 702 (9th Cir. 2012) (affirming dismissal of a 28 U.S.C. § 2241 habeas petition premised on claims of inadequate medical care); *Calderon v. Wilcox*, 374 F.Supp.3d 1024, 1038 (W.D. Wash. 2019) (declining to address noncitizen's claim in his 28 U.S.C. § 2241 habeas petition that his "detention—given its length, multiple transfers, housing among criminal detainees and prisoners, and 70 days in solitary confinement—has crossed the line into punishment" as such claims "do not belong in this immigration habeas action"); *Chester v. Carr*, 2018 WL 5862823, *7-8 (C.D. Cal. July 10, 2018) (holding that "[a] civil-rights action – not a habeas one" is the "proper vehicle" for claims regarding visitation, interference with mail, and confinement in solitary housing); *Lockhart v. Allen*, 2017 WL 2364353, *1 (S.D. Cal. May 30, 2017) (stating that while petitioner alleged "various problems" as to conditions of his prison life in his 28 U.S.C. § 2241 habeas petition, including that his access to courts had been interfered with and that he had been denied medical care, such claims were not cognizable for review); *Strouse v. Shartle*, 2017 WL 2224926, *3 (D. Ariz. May 22, 2017) (finding no jurisdiction to review a challenge to loss of commissary rights in a 28 U.S.C. § 2241 habeas petition).

---

[3]  It should be noted that while Mr. Mendoza relies on *Jones v. Blanas*, 393 F.3d 918 (9th Cir. 2004) to support his claim, Petition, at ¶¶ 82-83, *Jones*, 393 F.3d at 922 is a civil rights case, not a habeas case.

14

In asserting an Eighth Amendment violation, Mr. Mendoza alleges that his conditions of confinement and continued detention are dangerous as they expose him to a greater likelihood of contracting COVID-19.  Petition, at ¶¶ 91-92.  This claim should be rejected for multiple reasons.  First, as Mr. Mendoza readily concedes, this is a challenge to his conditions of confinement, not to the fact or duration of his confinement, and thus such a claim is not cognizable via a 28 U.S.C. § 2241 habeas petition.  *See Nelson*, 541 U.S. at 643; *Nettles*, 830 F.3d at 933.  Second, to the extent Mr. Mendoza seeks release from detention based on COVID-19 protocols at the Otay Mesa Detention Center, this Court has previously rejected such a release request in similar cases and should do so again here.  *See Alvarez v. Larose*, 445 F.Supp.3d 861, 865-66, 869 (S.D. Cal. 2020) (rejecting habeas petitioners' conditions of confinement claim premised on COVID-19 protocols at the Otay Mesa Detention Center and request for release as a remedy as outside the core scope of habeas corpus).  Third, Mr. Mendoza has been COVID-19 vaccinated and received a COVID-19 booster shot to protect from any potential future COVID-19 related illness.  Ex. 9; *see Gavilanes-Curiel v. Archambeault*, 2021 WL 4895222, *1 (S.D. Cal. Sept. 21, 2021) (ruling that habeas petitioner failed to demonstrate unconstitutional conditions of confinement "primarily because he was vaccinated", while noting "[c]ourts are consistently refusing to grant release from custody to inmates or detainees who have been vaccinated.").  Accordingly, the Court should reject Mr. Mendoza's conditions of confinement claims raised in this Petition.[4]

## IV.   THE COURT SHOULD DISMISS ALL NAMED RESPONDENTS IN THIS CASE OTHER THAN CHRISTOPHER J. LAROSE

The federal habeas statute provides that the proper respondent to a habeas petition is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see* 28 U.S.C. §

---

[4]  As noted above, to the extent Mr. Mendoza wishes to challenge these alleged constitutional violations, he may file a *Bivens* action in a properly-submitted civil complaint.  *See Tucker*, 925 F.2d at 332.

15

2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained").  In *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004), the Supreme Court assessed 28 U.S.C. §§ 2242 and 2243 and held that when a habeas petitioner challenges the legitimacy of their "present physical confinement," i.e., cases involving "core challenges," "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  *See id.* at 439 ("[W]e reaffirm that the immediate custodian, not a supervisory official who exercises legal control, is the proper respondent.").

The Circuit Courts that have addressed who is the proper respondent in an immigration habeas petition after *Padilla* have all stated that the warden of the noncitizen's detention facility, rather than some other official, is the proper respondent. *See Anariba v. Director Hudson County Correctional Center*, 17 F.4th 434, 444-45 (3d Cir. 2021); *Kholyavskiy v. Achim*, 443 F.3d 946, 949-54 (7th Cir. 2006); *Gonzales-Corrales v. I.C.E.*, 522 F. App'x 619, 622 (11th Cir. 2013); *Cf. Ali v. Brott*, 770 F. App'x 298, 299 n.1 (8th Cir. 2019).

As the District Court of Arizona recently stated in *Raghav v. Wolf*, 522 F.Supp.3d 534, 556 (D. Ariz. 2021) in addressing the proper respondent and impact of *Padilla* on a immigration habeas petition:  "In the end, the ultimate relief in every habeas corpus matter is, by definition, to 'deliver the body.'"  The person who can do so in the immigration habeas context is the warden of the detention facility in which the habeas petitioner resides.  *Id.* at 567.  Thus, the Court should dismiss all other named Respondents in this case other than Christopher J. LaRose, who is the warden of the Otay Mesa Detention Center in which Mr. Mendoza is currently detained and the individual that Mr. Mendoza concedes has "immediate physical custodian of [him]", Petition, at ¶ 11.  *See Padilla*, 542 U.S. at 435, 439; *Anariba*, 17 F.4th at 444-45; *Kholyavskiy*, 443 F.3d at 949-54; *Gonzales-Corrales*, 522 F. App'x at 622; *Cf. Ali*, 770 F. App'x at 299 n.1.

16

## **CONCLUSION**

For all the foregoing reasons, the Court should deny Mr. Mendoza's Petition.

Respectfully submitted,

BRIAN BOYNTON
Principal Deputy Assistant Attorney General
Civil Division

SARAH S. WILSON
Assistant Director
Office of Immigration Litigation

s/ Anthony J. Messuri
ANTHONY J. MESSURI
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dep't of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Telephone: 202-616-2872
Email: Anthony.Messuri@usdoj.gov

17

3:21-cv-01169-BEN-AHG