PRISCILLA MERIDA
California State Bar No. 328501
AL OTRO LADO, INC.
511 San Ysidro Blvd. #333
San Ysidro, California 92173
Telephone: 619-942-6238
Email: priscilla@alotrolado.org

*Pro Bono* Attorney for Petitioner
HEVER ALBERTO MENDOZA LINARES

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEVER ALBERTO MENDOZA LINARES, <br><br> Petitioner, <br><br> v. <br><br> MERRICK GARLAND, United States Attorney General, ALEJANDRO MAYORKAS, Secretary of the Department of Homeland Security, GREGORY J. ARCHAMBEAULT, San Diego Field Office Director, Immigration and Customs Enforcement; JAMES DOBSON, Otay Mesa Detention Center Officer in Charge, Immigration and Customs Enforcement; CHRISTOPHER J. LAROSE, Senior Warden, Otay Mesa Detention Center, <br><br> Respondents. | Case No.: 3:21-cv-01169-BEN-AHG <br><br><br> **TRAVERSE IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS** |

## I.    INTRODUCTION

Petitioner Hever Alberto Mendoza Linares ("Mr. Mendoza") replies to Respondents' Return in Opposition to Petition for Writ of Habeas Corpus. In summary, Mr. Mendoza and the Respondents agree that this Court has jurisdiction over Mr. Mendoza's petition, and that Mr. Mendoza has been held for 27 months without an individualized bond hearing. That makes this a constitutional violation making his detention unlawful, requiring habeas relief. The disagreement lies on whether legal and constitutional protections extend to Mr. Mendoza. This reply shows that the Defendants' objections are inapplicable, and that the promise of freedom habeas guarantees extends to Mr. Mendoza as well.

Mr. Mendoza remains detained by Immigration and Customs Enforcement ("ICE") at the Otay Mesa Detention Center ("OMDC") pending removal proceedings since February 10, 2020. The government agrees with Mr. Mendoza on several points. It concedes that Respondents are detaining him under 8 U.S.C. § 1225(b), INA § 235(b). The government acknowledges that this Court has jurisdiction over Mr. Mendoza's petition for a writ of habeas corpus under 28 U.S.C. § 2241. Respondents confirm that while Mr. Mendoza requested a bond hearing, the Immigration Judge denied his request on the basis that the immigration court lacked jurisdiction. The government ostensibly agrees that Respondents have not provided him an individualized bond hearing at any time during the twenty-

1

seven months they have detained him. Moreover, Respondents concede that all of Mr. Mendoza's parole requests with DHS have been denied.

Respondents first contend that *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020) does not afford any rights, other than statutory, to arriving noncitizens. However, *Thuraissigiam* does not stand for this proposition. Secondly, Respondents contend that the Eighth Amendment does not apply to civil detainees. This is an erroneous conclusion because the Eighth Amendment does apply to civil detainees when conditions of detention are so substandard that they amount to punishment. Thirdly, Respondents contend that Mr. Mendoza has raised an uncognizable issue by attaching a conditions of confinement claim to his constitutional challenges. However, this is a misconstruction of Mr. Mendoza's petition because he is not attaching a separate claim, but describes the conditions that speak to the illegality of his executive detention. Thus, Respondents' arguments are inapplicable.

Mr. Mendoza therefore requests that this Court grant his writ of habeas corpus and either order his immediate release, or direct that Respondents provide him with an individualized bond hearing complying with adequate procedural protections.

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## II.    ARGUMENT

**1.  Respondents Misapply Case Law And Failed To Recognize That Case Law Confirms Mr. Mendoza's Prolonged Detention Violates The Fifth Amendment's Due Process Clause**

The authorities Respondents cite do not support their arguments. Rather, as we will see below, these authorities require this Court to grant Mr. Mendoza habeas relief.

*Jennings v. Rodriguez, 138 S.Ct. 830 (2018)*

In *Jennings v. Rodriguez*, the first case upon which Respondents rely, the Supreme Court only addressed an issue of statutory interpretation and expressly avoided constitutional questions. 138 S. Ct. at 851. Contrary to Respondents position, Mr. Mendoza does not concede that *Jennings* foreclosed the relief he is seeking. Rather, Mr. Mendoza further explains that the Supreme Court did not rule on the general immigration detention statutes' (8 U.S.C. §§ 1225(b), 1226(a), 1226(c), INA §§ 235(b), 236(a), 236(c)) constitutionality, to wit: whether unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process. In fact, the Supreme Court in *Jennings* expressly remanded to the Ninth Circuit to decide the constitutional question, leaving the district court's class-wide injunction intact in the Central District of California.[1] *See Jennings*, 138 S. Ct. at 851; *see also Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018).

---

[1] That litigation remains ongoing. On May 28, 2020, the district judge denied the government's motion to decertify the class. *Rodriguez*, No. 2:07-cv-03239-TJH-

3

Since the Supreme Court's decision in *Jennings*, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018); *see also Demore v. Kim*, 538 U.S. 510, 532, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003) (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident [ ] ...could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."). Numerous federal district courts have provided bond hearings to arriving noncitizens in prolonged detention in the wake of *Jennings*. *See Yagao v. Figueroa*, No. 17-cv-2224-AJB-MDD, 2019 U.S. Dist. LEXIS 54566, at *5 (S.D. Cal. Mar. 29, 2019); *Gonzalez v. Bonnar*, No. 18-cv-05321-JSC, 2019 U.S. Dist. LEXIS 12636, at *2 (N.D. Cal. Jan. 25, 2019) (holding that Mr. Gonzalez's "detention of more than one year with no end in sight violates his due process rights such that he is entitled to an individualized bond hearing); *Hechavarria v. Sessions*, No. 15-CV-1058, 2018 WL 5776421, at *1, *9 (W.D.N.Y. Nov. 2, 2018) (holding that the petitioner's "continued detention violates the Due Process Clause unless the   government

RNB, ECF No. 555.

demonstrates by clear and convincing evidence before a neutral decision maker that it is necessary to serve a compelling regulatory purpose"); *Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at \*11 (S.D.N.Y. July 25, 2018) ("the Court is unpersuaded that *Jennings* has any bearing on the appropriate procedures consistent with due process."). The Ninth Circuit has consistently held that prolonged detention without an individualized hearing presents constitutional concerns for due process rights. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1065-67 (9th Cir. 2008) (quoting *Zadvydas*, 533 U.S. at 690-91); *see also Casas-Castrillon v. Holder*, 535 F.3d 942, 949-52 (9th Cir. 2008).

Here, Mr. Mendoza has been confined in ICE custody for 27-months without an individualized hearing before a neutral arbiter at any point during his detention. While Mr. Mendoza had requested an individualized hearing by an Immigration Judge ("IJ"), the IJ denied his request because he did not believe he had jurisdiction and thus no IJ has conducted an individualized bond hearing. Respondents confirm that Mr. Mendoza's multiple parole requests have all been denied. In fact, the Ninth Circuit has found "that the discretionary parole system available to § 1225(b) detainees is not sufficient to overcome the constitutional concerns raised by prolonged mandatory detention." *Rodriguez v. Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013). This is because parole does not provide a neutral forum to contest the necessity of ongoing detention. Instead it is a purely discretionary process, administered by the jailer. Neither the detained noncitizen nor counsel are provided

an in-person hearing to contest facts leading to the parole decision. And no review of that decision is available. *See Rodriguez*, 715 F.3d at 1144 (describing parole process). Therefore, Mr. Mendoza's unreasonably prolonged executive detention without a bond hearing constitutes a violation of his due process rights under the Fifth Amendment.

*Shaughnessy v. United States ex rel. Mezei, 73 S.Ct. 625 (1953)*

Respondents cite to *Shaughnessy v. United States ex rel. Mezei* ("*Mezei*"), 73 S.Ct. 625, 627 (1953), but interpreted against the constitutional and statutory context of *Mezei* in 1953 as *Mezei* does not do what Respondents say it does, and *Mezei* does not foreclose Mr. Mendoza's claim, As a result, this Court would err in applying *Mezei* in the manner that Respondents urge it to. In *Mezei*, the Supreme Court held that noncitizens "on the threshold of initial entry" stand "on a different footing" from noncitizens "who have once passed through our gates." *Mezei*, 73 S.Ct.. at 629. In *Mezei* the Court subsequently ruled, during the height of the Cold War, that Mezei could be excluded from the United States and detained on Ellis Island, based on secret national security grounds and because no other country was willing to take him. Respondents, though, rely on a misapplication of law found in *Mezei*.

Specifically, the government cites to the entry fiction doctrine in *Mezei,* to support its contention that arriving noncitizens fall outside the Fifth Amendment's protections. However, in *Jennings*, Justice Breyer rejected this legal fiction

6

contention when he pointed to the concerns of not affording a right to a bond hearing by stating, "We cannot here engage in this legal fiction. No one can claim, nor since the time of slavery has anyone to my knowledge successfully claimed, that persons held within the United States are totally without constitutional protection. Whatever the fiction, would the Constitution leave the Government free to starve, beat, or lash those held within our boundaries?" *Jennings v. Rodriguez*, 138 S. Ct. 830, 862–663 (Breyer, J., dissenting).[2] Justice Breyer noted that because arriving noncitizens are denied an opportunity to challenge their detention and seek release via a bond hearing, they are deprived of liberty without due process of law. *Id*. at 861 (citing to *Wong Wing v. United States,* 163 U.S. 228, 237–38 (1896). The dissenting opinion engaged in an extensive historical examination of the right of bail as contained in both Blackstone's Commentaries on the Laws of England (1769) and early U.S. State and Federal law. *See id. at* 876 ("[S]ince Blackstone's time and long before, liberty has included the right of a confined person to seek release on bail. It is neither technical nor unusually difficult to read the words of

---

[2] Though Justice Breyer's opinion is a dissent, the issue we cite it for—the constitutional requirements applicable in immigration detention cases—has yet to be substantively addressed by the Court. *Jennings* was a statutory interpretation case, and the majority found the statute unambiguous and remanded to the Ninth Circuit for reconsideration of the constitutional question. S*ee Jennings v. Rodriguez*, 138 S. Ct. 830, 851 (2018) ("[T]he Court of Appeals . . . had no occasion to consider respondents' constitutional arguments on their merits. Consistent with our role as a court of review, not of first view, we do not reach those arguments." (internal citation omitted)).

these statutes as consistent with this basic right."). Blackstone's commentaries, which Justice Breyer based his reasoning upon, explain the danger that rises when jurists lose sight of the legal fiction's origins that are no longer warranted, but instead have become harmful applications.[3] While the entry fiction doctrine that emerged over a century ago had humanitarian origins to protect immigrants being boarded on ships and subjected to horrible conditions, this is no longer the applicability of the entry fiction doctrine.[4] In fact, it has strayed from its origins to the point that the government has argued in *Jennings* that one of the reasons for detention without a bond hearing for arriving noncitizens was to prevent the disruption of labor markets,[5] evidencing that this legal fiction is now subjecting noncitizens to harsher conditions of immigration detention that strips them of constitutional protections. Thus, here, we must reconsider the applicability of the entry fiction doctrine due to the constitutional concerns it now raises, especially given that ICE has implemented technological alternatives that it claims are 95% effective.[6] Notably, the majority in *Jennings* remanded back to the Ninth Circuit to

---

[3] Eunice Lee, *The End of Entry Fiction,* 99 N.C. L. REV. 565 (2021), available at: https://scholarship.law.unc.edu/nclr/vol99/iss3/2.

[4] *Id.*

[5] Brief for the Petitioners at 23, *Jennings v. Rodriguez,* 138 S. Ct. 830 (2018) (No. 15-1204).

[6] *See* DHS, U.S. ICE Budget Overview, FY 2021 Congressional Justification, at ICE–O&S–165, https://www.dhs.gov/sites/default/files/publications/u.s._immigration_and_custo ms_enforcement .pdf (stating that alternatives to detention program "provides a high level of supervision," "enhances ICE's operational effectiveness," and has

decide the constitutional arguments. *See supra* section I, p. 3-5. This means that the constitutional concerns of due process violation remains for arriving noncitizens, thus the entry fiction doctrine does not determine the availability of habeas; rather the holistic review of prolonged detention case law supports habeas in this context.

Additionally, the government's contention that the plenary power doctrine is dispositive (citing *Shaughnessy v. United States ex rel. Mezei,* 73 S.Ct. 625, 627 (1953)) incorrectly minimizes the Supreme Court's and the Ninth Circuit's later expressions of constitutional concerns regarding prolonged detention. The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). In *Zadvydas v. Davis*, the Supreme Court—observing that plenary power "is subject to important constitutional limitations" (533 U.S. 678, 695 (2001))—concluded that detention violates the Constitution when it is no longer "reasonably necessary to bring about that [noncitizen's] removal from the United States." *Id*. at 689. That Court applied a similar principle in *Demore v. Kim*, upholding 8 U.S.C. § 1226(c), INA § 236(c)'s constitutionality "for the brief period necessary for . . . removal

---

"significant program success rates while operating at a low average daily cost."); In 2014, the Government Accountability Office found that 95% of those on ATD with case management appeared at their final hearings and 99% appeared overall at all scheduled hearings. GAO-15-26, Alternatives to Detention, at 30 (Nov. 2014), https://www.gao.gov/assets/670/666911.pdf.

proceedings" (538 U.S. 510, 523 (2003)) after the government represented that "the detention at stake . . . lasts roughly a month and a half in the vast majority of cases . . . , and about five months in the minority of cases in which the [noncitizen] chooses to appeal" (*Id.* at 530).

In *Zadvydas*, the Supreme Court rejected the government's argument that its immigration powers permit it to indefinitely detain noncitizens after the conclusion of removal proceedings. 533 U.S. 678 at 695. Since then, the government has repeated that same argument to justify prolonged, indefinite detention pending removal proceedings. Each time, federal courts have routinely rejected it. For example, every federal Court of Appeals after *Demore* to consider prolonged detention—even those subject to mandatory detention under INA § 236(c), a statute that like § 1225(b) mandates detention of inadmissible noncitizens pending removal proceedings—held detention was limited to a reasonable period by the Due Process Clause. *See, e.g., Rodriguez v. Robbins* (*Rodriguez III* ), 804 F.3d 1060, 1089 (9th Cir. 2015), rev'd on other grounds sub nom. by *Jennings v. Rodriguez, 138 S. Ct. 830 (2018); Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1221 (11th Cir. 2016), vacated as moot, 890 F.3d 952 (11th Cir. 2018); *Reid v. Donelan*, 819 F.3d 486, 501 (1st Cir. 2016); *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015); *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 235 (3d Cir. 2011); *Ly v. Hansen*, 351 F.3d 263, 271-72 (6th Cir. 2003). In *Rodriguez III*, the Ninth Circuit observed that "the due process analysis changes as 'the period of ... confinement grows.'" 804 F.3d at 1089

(quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1086 (9th Cir. 2011)). The Ninth Circuit reasoned that "longer detention requires more robust procedural protections." *Id.* Mr. Mendoza's detention has exceeded a reasonable period as he has now been detained for over two years without the right to seek release before a neutral arbiter, thus violating his due process rights.

Overall, the historical origins of the entry fiction, against the principles underlying Supreme Court caselaw applying safeguards to prolonged detention, require a safeguard here, as well.

*Dept. of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020)

The government also contends that the Supreme Court's holding in *Dept. of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959 (2020), reinforced Congress's plenary power over noncitizens' due process rights. But that case's due process holding involved a challenge to the *procedures* of his removal proceedings because the petitioner in that case was arguing that the expedited asylum procedure itself violated due process because he did not receive adequate safeguards, such as a competent translator and an opportunity to present country-condition reports. *Thuraissigiam*, 140 S. Ct. at 1968, 1981-83. Mr. Mendoza did not bring forth this habeas petition to contest his removal proceedings, but rather to contest the legality of his prolonged detention without an individualized hearing. In fact, "detention . . . [is] a substantive matter." *Martinez-Vazquez v. I.N.S.*, 346 F.3d 903, 907 (9th Cir. 2003). Substantive matters are not merely procedural, hence *Thuraissigiam* does

not strip this Court of its ability to extend the Constitution's protections to people subject to prolonged detention, like Mr. Mendoza. *Id; Thuraissigiam, supra.* And as for its Suspension Clause holding, the Supreme Court distinguished the use of habeas corpus as a means "to obtain additional administrative review of [an] asylum claim" from its traditional use—Mr. Mendoza's use—as "a means to secure release from unlawful detention." *Thuraissigiam*, 140 S. Ct. at 1963; *id*. at 1968-80. The Supreme Court in *Thuraissigiam* expressed that "[h]abeas has traditionally provided a means to seek release from unlawful detention" and that "the legality of [Mr. Thuraissigiam's] detention is not in question." *Id.* The Court described that because "[r]espondent does not seek release from custody, but an additional opportunity to obtain asylum . . [h]is claims therefore fall outside the scope of the writ as it existed when the Constitution was adopted." *Id.* Therefore, contrary to Respondents' contention that *Thuraissigiam* foreclosed Mr. Mendoza's claim, the Supreme Court's reasoning actually supports Mr. Mendoza's habeas petition because Mr. Mendoza is seeking release from unlawful detention.

*Guerrier v. Garland,* 18 F.4th 304 (9th Cir. 2021)

Respondents then cite to *Guerrier v.* Garland only to quote, without context, that "[I]n the expedited removal context, a petitioner's due process rights are coextensive with the statutory rights Congress provides." However, the court in *Guerrier* made that statement in reference to the petitioner's argument that his due process rights were violated when "the Government deprived him of a

constitutional right to counsel," which is not a relevant issue in this case. 18 F.4th at 310. Furthermore, *Guerrier* involved a challenge to the merits of a noncitizen's removal proceedings; it did not involve a habeas challenge contesting unlawful detention. In fact, Respondents' subsequent case citations suggest Respondents misconstrued Mr. Mendoza's present claim because Respondents cite to cases like *Rauda v. Jennings*, 8 F.4th 1050 (9th Cir. 2021) and *Tazu v. Att'y Gen. United States,* 975 F.3d 292, 300 (3d Cir. 2020), where noncitizens brought claims to challenge their orders of removal, not to challenge the legality of their detention. *See* Dkt. 7 at 6-7.

This is a trend we see: the cases Respondents cite are about claims Mr. Mendoza is not making. Citations to cases regarding nontraditional uses of habeas do not assist us in this claim, that is a traditional challenge to the legality of Mr. Mendoza's detention.

### 2.  Mr. Mendoza Seeks Traditional Habeas Relief And Respondents' Cited Cases All Support It Being Available In This Case

*Rauda v. Jennings, 8 F.4th 1050 (9th Cir. 2021)*

Respondents first cite to *Rauda v. Jennings*, 8 F.4th 1050 (9th Cir. 2021). However, this case is distinguishable as the petitioner was not seeking the same relief as Mr. Mendoza. Specifically, the petitioner in *Rauda* had appealed a district court's order denying his request for a temporary restraining order to prevent the

13

government from removing him from the United States. *Id* at 1052. Mr. Mendoza is not asking for this; he is asking for review of the legality of his detention.

In fact, *Rauda* supports granting Mr. Mendoza's petition, and undermines Respondents' arguments. The Ninth Circuit in *Rauda* clarified that "[t]he [Supreme Court in *Thuraissigiam*] explained that the 'core' of habeas relief is release from unlawful executive detention, not the right to remain in a country. *Id.* at 1056. Where "respondent did not ask to be released," but rather sought relief from removal, respondent was seeking relief that fell "outside the scope of the common-law habeas writ." *Id.* at 1056. The Ninth Circuit further states, "Like the petitioner in *Thuraissigiam*, Matias is not seeking 'a remedy for unlawful executive detention,' and his claims are thus outside of the scope of habeas relief. Rather than seeking the traditional use of habeas, Matias specifically wants to avoid being released (into El Salvador). As the Court noted, the common law reserves habeas relief for remedies from unlawful custody. *Id.* at 1969. But Matias seeks to remain in the United States, even if that requires staying in custody." *Id.* at 1057.

Mr. Mendoza is not asking to stay in custody. Mr. Mendoza is asking to be released from custody, or to have an individualized bond hearing to reconsider his detention. Thus, here, too, the Respondent's citations actually support Mr. Mendoza's claim because his petition before this Court is for the traditional use of habeas, not to challenge an order of removal, but to seek relief from his unlawful executive detention.

*Tazu v. Att'y Gen. United States*, 975 F.3d 292 (3d Cir. 2020)

Similarly, Respondents misstate Mr. Mendoza's claim when they cite to *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 300 (3d Cir. 2020). The Third Circuit in *Tazu* denied non-traditional habeas relief where a petitioner filed writ for habeas corpus, seeking to challenge his removal order instead of filing a Petition for review, via a re-detention challenge. *Id.* In fact, the court in *Tazu* expressly stated, "If Tazu had challenged the length of his confinement, for instance, he could have pursued that challenge outside a petition for review." 975 F.3d at 299. Unlike the petitioner in *Tazu,* Mr. Mendoza is not challenging his removal proceedings as he has a proper pending Petition for Review, but rather he is challenging the violation of due process that his prolonged 27 month detention without an individualized review before a neutral arbiter presents.

*Martinez v. LaRose*, 980 F.3d 551, 552 (6th Cir. 2020)

Respondents also cite to *Martinez v. LaRose*, 980 F.3d 551, 552 (6th Cir. 2020), where an individual challenged his detention after being subjected to removal order reinstatement and detention during his 8 U.S.C. § 1231(a) withholding-only proceedings. In that case, the Sixth Circuit held the noncitizen was not entitled to a bond hearing "[b]ecause the authority for Melara's detention arises out of 8 U.S.C. § 1231(a) and his removal is reasonably foreseeable." *Martinez*, 968 F.3d at 566. However, the Ninth Circuit, in the post-*Jennings* era, has held that a petitioner like the one in *Martinez v. LaRose* is entitled to a bond

hearing due the violation of due process that prolonged detention causes. *See Aleman Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020). Thus, contrary to the Sixth Circuit, current Ninth Circuit case law, reflected in *Aleman,* holds that noncitizens detained six months or longer under 8 U.S.C. §1231(a)(6) are entitled to individualized bond hearing. *Aleman Gonzalez,* 955 F.3d at 762. This is an important distinction given that Mr. Mendoza's petition is within the Ninth Circuit jurisdiction. *Aleman* controls, not *Martinez.*

### 3. Additionally, Mr. Mendoza's Right To An Individualized Hearing Is Supported By Controlling Ninth Circuit Case Law In *Casas-Castrillon V. Dept. Of Homeland.*

Respondents argue that because Mr. Mendoza was classified as an arriving noncitizen initially detained pursuant to 8 U.S.C. § 1225(b) that he must "remain in detention 'until removed.'" *See* Dkt. 7 at 7. However, by stating that "Mr. Mendoza's rights begin and end with the statute" (Dkt. 7 at 9), Respondents fail to recognize Ninth Circuit case law holding that the statutory framework of detention is "not static." *See Casas-Castrillon v. Dept. of Homeland*, 535 F.3d 942, 945 (9th Cir. 2008).

Significantly, the Ninth Circuit has held that, in order to avoid the serious constitutional questions raised by indefinite mandatory detention, detention of a noncitizen beyond an expedited period ceases to be mandatory and instead becomes discretionary under Section 1226(a). *See Casas-Castrillon v. Dept. of Homeland Sec.,,* 535 F.3d 942, 951 (9th Cir. 2008); *Tijani*, 430 F.3d at 1242; *see* 8 U.S.C. §

1182(d)(5). Specifically, the Ninth Circuit in *Casas-Castrillon* held that an individual is eligible for a bond hearing if a petition for review is pending before the Court of Appeals and a stay of removal has been granted in their case, even if they had originally been subjected to mandatory detention. 535 F.3d at 944.

"Where [a noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008); *see also Casas-Castrillon v. Holder*, 535 F.3d at 945 (explaining that petitioner's "relief turns in part on locating him within the statutory framework of detention"). The Ninth Circuit has consistently affirmed that the statutory detention framework "is not static," and DHS's detention authority "shifts as the [noncitizen] moves through different phases of administrative and judicial review." *Casas-Castrillon v. Holder*, 535 F.3d at 945. Thus, arguably, the detention of noncitizens who were initially subjected to mandatory detention pending removal proceedings, but have since become subject to prolonged detention and have a judicial review action, such as stay by the court of appeals, are governed by Section 1226(a) under the reasoning of *Casas-Castrillon*, and they are entitled to an individualized custody hearing before an immigration judge. *See, e.g., Casas-Castrillon v. Dep't of Homeland Sec.,* 535 F.3d 942, 947–48 (9th Cir. 2008*)* (construing the mandatory detention statute to authorize detention only for a reasonable period*)*.

Mr. Mendoza's circumstances of prolonged detention is the scenario that the Ninth Circuit warned against in both *Casas-Castrillon* and the previously discussed prolonged detention cases. Here, pursuant to *Casas-Castrillon*, although Mr. Mendoza was originally detained under §1225, the statutory authority for his detention has since shifted when he filed a petition for review of his negative credible fear determination and was granted a stay.

This Court can grant Mr. Mendoza's habeas petition as *Casas-Castrillon* confirms that his prolonged detention without a bond hearing violates his due process rights.

### 4. Respondents Failed To Recognize That Case Law Does Afford Noncitizens Constitutional Protections Under The Eight Amendment.

Mr. Mendoza is not arguing that deportation is punishment, but rather that the government's indifference to his medical needs while in confinement pose an ongoing and unjustifiable risk to his health. This "constitute[s] an unnecessary and wanton infliction of pain . . . repugnant to the conscience of mankind," in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 105-06, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Respondents therefore mischaracterize his petition as a claim that deportation is punishment when they argue that "deportation is not a punishment and thus not subject to Eighth Amendment protections." Dkt. 7 at 11.

Conditions that pose an unreasonable risk of future harm violate the Eighth Amendment's prohibition on cruel and unusual punishment. These principles also

apply in the context of immigration detention. The constitutional protections afforded to immigration detainees are more comprehensive than those afforded to criminal defendants. Immigrant detainees, even those with prior criminal convictions, are civil detainees held pursuant to civil immigration laws. *Zadvydas v. Davis*, 533 U.S. 679, 690 (2001). The Ninth Circuit has consistently emphasized that civil detainees, like Mr. Mendoza here, are entitled to conditions of confinement that are superior to those of convicted prisoners and to those of criminal pretrial detainees. *Jones v. Blanas*, 393 F.3d 918, 933-34 (9th Cir. 2004), cert. denied, 546 U.S. 820 (2005); *see also King v. Cty. of Los Angeles*, 885 F.3d 548, 557 (9th Cir. 2018) (finding presumption of punitive, and thus unconstitutional, treatment where conditions of confinement for civil detainees are similar to those faced by pre-trial criminal detainees).

The Fifth Amendment and Eighth Amendment impose a duty on the Government to provide for the safety and well-being of persons who are taken into custody which includes an obligation to protect from unsafe or life-threatening conditions. These requirements are violated when a condition of detention is not reasonably related to a legitimate government objective and when government officials are deliberately indifferent to a substantial risk of harm to the detained person. Respondents point to Mr. Mendoza's COVID-19 vaccinations as evidence that he is now protected from any potential future COVID-19 related illness. This argument is without merit in an on-going pandemic with a rapidly mutating virus

and evidence of individuals, both vaccinated and unvaccinated, continuing to suffer devastating consequences from COVID-19. Respondents continue to detain Mr. Mendoza, whose underlying health conditions (discussed infra) render him particularly vulnerable to contracting COVID-19, spreading it to others, and suffering serious injury or death as a result. Otay Mesa Detention Center has had 1,048 total confirmed COVID-19 cases among detainees alone, including one COVID-19 related death.[7] The conditions of detention increase Mr. Mendoza's risk of contracting COVID-19.[8] Respondents have not, and could not possibly, implement social distancing measures that are required to prevent the rapid spread of COVID-19 in these facilities. *Id.* Respondents know about the prevalence of COVID-19 in Otay Mesa, and the risk that it poses to individuals with certain underlying conditions. *Id.* Under these circumstances, Mr. Mendoza's continued detention amounts to deliberate indifference to a substantial risk of harm to Mr. Mendoza. Respondents' exposure of Mr. Mendoza to this substantial risk of serious illness or death amounts to punishment.

Moreover, since Mr. Mendoza filed his petition before this Court, his health has worsened substantially, a fact Respondents know, responding with deliberate

---

[7] U.S. Immigration and Customs Enforcement, *ICE Guidance on COVID-19*, available at https://www.ice.gov/coronavirus#citations.

[8] Office of Inspector General, *Violations of ICE Detention Standards at Otay Mesa Detention Center*, available at: https://www.oig.dhs.gov/videos/2021/2021-10/violations-ice-detention-standards-otay-mesa-detention-center.

indifference. Most recently, Mr. Mendoza began coughing up blood, which finally forced ICE to send Mr. Mendoza to an off-site provider. *See* Exhibit A, UCSD Health February 2022 Records. Dr. Sapideh Gilani noted that Mr. Mendoza reported throat issues and has not been on PPIs, H2-blockers, or been to a GI (gastrointestinal) specialist and that he had hemoptysis twice (coughing blood). *Id.* On February 7, 2022, an off-site physician from UC San Diego Health issued a prescription to "Please send patient to GI." *Id.* On February 15, 2022, Mr. Mendoza was informed by ICE that he had been referred to a GI specialist and that he "will be sent as ordered by provider." Exhibit B, Notices to Mr. Mendoza. Three days later, on February 18, 2022, ICE informed Mr. Mendoza that "[p]rovider will hold off GI referral to monitor effectively of therapy first." *Id.* To this day, Mr. Mendoza has not been seen by a GI specialist despite multiple pleadings to obtain competent medical care due to his persistent cough, difficulty swallowing, and coughing up blood. *See* Exhibit A.

In other words, Respondents are denying Mr. Mendoza medical treatment through their detention, in full knowledge of what treatment he needs and what will happen if he does not get it.

Civil detainees like Mr. Mendoza need not show "deliberate indifference" to establish a constitutional violation. *Jones*, 393 F.3d at 934. Instead, a condition of confinement for a civil immigration detainee violates the Constitution "if it imposes some harm to the detainee that significantly exceeds or is independent of the

inherent discomforts of confinement and is not reasonably related to a legitimate governmental objective or is excessive in relation to the legitimate governmental objective." *Unknown Parties v. Johnson,* No. CV-15-00250-TUC-DCB, 2016 WL 8188563, at *5 (D. Ariz. Nov. 18, 2016), aff'd sub nom. *Doe v. Kelly,* 878 F.3d 710 (9th Cir. 2017).

Mr. Mendoza's constitutional rights are being violated because the conditions of confinement resulting from his 27-month confinement places him at serious risk not only of being infected with COVID-19, but also of worsening health conditions, and Respondents are being deliberately indifferent to this critical safety concern. ICE is undoubtedly aware that Mr. Mendoza's health is worsening to the point that he's coughing up blood, yet they are refusing to remit him to competent care, placing his health at risk. This makes his detention itself harmful, it makes his detention itself illegal, independently from the other bases to find this detention unlawful.

Additionally, the total denial of bail the government defends cannot be reconciled with that Amendment's ancient prohibition on excessive bail. *Cf. Jennings,* 138 S. Ct. at 862 (Breyer, J., dissenting) ("it is not surprising that this Court has held that both the Fifth Amendment's Due Process Clause and the Eighth Amendment's Excessive Bail Clause apply in cases challenging bail procedures").

//

//

### 5. Habeas Is A Broad, Flexible Remedy That Authorizes Courts To Order Mr. Mendoza's Release From Unlawful Executive Detention.

The government misconstrues Mr. Mendoza's claim when it states that Mr. Mendoza's claim is not cognizable via a 28 U.S.C. § 2241 habeas petition because he "attaches" a "conditions of confinement" claim. Contrary to Respondents' mischaracterization of his claim, Mr. Mendoza is not merely challenging a specific condition of his confinement but instead claims that his prolonged confinement itself violates his due process rights—a direct challenge to the validity of his detention. *See Muhammad v. Close*, 540 U.S. 749, 750, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004). Other courts in this Circuit have considered similar claims brought under § 2241. *See Bent v. Barr*, Case No. 19-CV-06123-DMR, 2020 WL 1812850 (N.D. Cal. April 9, 2020); *Castillo v. Barr*, Case No. CV 20-00605-TJH (AFMx), —— F.Supp.3d ——, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020). Moreover, the Ninth Circuit itself has sua sponte ordered the release of an immigrant detainee "in light of the rapidly escalating public health crisis[.]" *Xochihua-Jaimes v. Barr*, 798 Fed.Appx. 52, 52 (9th Cir. 2020).

Respondents cite *Nettles,* but that case stands for principles inapplicable in this case. *Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016). *Nettles involved* a habeas action where a ***state prisoner*** only challenged a prison disciplinary action on constitutional grounds, claiming the improper disciplinary action could affect his eligibility for parole. In *Nettles,* the Ninth Circuit rejected the state prisoner's

attempt to raise a conditions of confinement claim via 28 U.S.C. § 2254 as the court found that it "need not address how the standard . . . adopted here applies to relief sought by prisoners in **federal** custody," leaving it an open question. *Id.* at 931. Another factor distinguishing *Nettles* from this case is that in *Nettles* the petitioner's claim did not implicate at all the "fact or duration" of his conviction or sentence. *See id.* at 925; *see also Workman v. Mitchell*, 502 F.2d 1201, 1208 n.9 (9th Cir. 1974)) (stating, in dicta, that it appeared "fairly well established that ... federal habeas corpus actions are now available to deal with questions concerning both the duration and the conditions of confinement").

Mr. Mendoza is not a state prisoner. Rather, Mr. Mendoza's constitutional challenge concerns the unlawfulness of his 27-month long civil confinement. It inevitably requires a discussion of the conditions under which he has been held, and continues to be held in, as a result of his continued detention.

Again, Respondents mischaracterize Mr. Mendoza's case when they analogize his case to *Alvarez v. Larose*, 445 F.Supp.3d 861, 865-68 (S.D. Cal. May 9, 2020), where this Court held that plaintiffs' "claims would not exist **but for** their current conditions of confinement," (emphasis added). This is not the case for Mr. Mendoza who is contesting the fact and duration of his confinement, not merely the conditions of his confinement.

As such, the Respondents' cases are inapplicable and do not support the legality of Mr. Mendoza's detention.

**6.  Mr. Mendoza Listed The Proper Respondents Such That Dismissal Of Any Respondent Is Not Warranted.**

The Respondents request this Court dismiss all named Respondents in this case other than Christopher J. LaRose. Respondents primarily rely on *Rumsfeld v. Padilla* 542 U.S. 426 (2004) in which the Supreme Court addressed the identity of the proper respondent to a § 2241 habeas petition filed by a **U.S. citizen** challenging his detention as an enemy combatant. 542 U.S. 426 (2004)(emphasis added). Significantly, however, the Supreme Court expressly left open the question of the identity of the proper respondent(s) to a petition filed by a **noncitizen** "detained pending deportation." *Id.* at 435 n.8 (recognizing circuit split on "the question whether the Attorney General is a proper respondent to a habeas petition filed by [a noncitizen] detained pending deportation" and stating "[b]ecause the issue is not before us today, we again decline to resolve it"). In so doing, the Supreme Court declined to resolve the split among the lower courts regarding whether the immediate custodian rule applies in the immigration detention context. *Id.*

As such, Respondents failed to recognize the varying decisions from lower courts on this issue. Some courts have found that only the warden of the detention facility where the noncitizen is held is the proper respondent. See, *e.g., Vasquez v. Reno,* 233 F.3d 688, 6993-96 (1st Cir. 2000); *Kholyavskiy v. Achim*, 443 F.3d 946, 949-53 (7th Cir. 2006); *Mi Hui Lu v. Lynch*, No. 1:15-cv-1100-GBL-MSN, 2015 WL 8482748, at *4-5 (E.D. Va. Dec. 7. 2015). Other courts recognize national-

level policy making officials, such as the U.S. Attorney General, as proper respondents. *See, e.g., Santos v. Smith*, 260 F. Supp. 3d 598, 607-08 (W.D. Va. 2017); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 723-25 (D. Md. 2016); *Somir v. United States*, 354 F. Supp. 2d 215, 217-18 (E.D.N.Y. 2005). Still others recognize as the proper respondent the federal official with responsibility over the detention facility or the federal contract governing the detention facility, usually the ICE Field Office Director. *See, e.g., Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1183-87 (N.D. Cal. 2017); *Campbell v. Ganter*, 353 F. Supp. 2d 332, 336 (E.D.N.Y. 2004). In yet other cases, courts, including the Ninth Circuit, reach the merits of habeas claims without addressing the issue where the petitioner named high level federal officials, the ICE Field Office Director, and the warden as respondents. *See, e.g., Hernandez v. Sessions*, 872 F.3d 976 (9th Cir 2017) (affirming district-wide preliminary injunction in class action case challenging bond practices where plaintiffs named several high-level officials, the Field Office Director for the local ICE office, and the wardens of detention facilities); *Rivera v. Holder,* 307 F.R.D. 539, 544 n.1 (W.D. Wash. 2015).

In order to exercise personal jurisdiction over a habeas petition, a district court need only find that one named respondent is proper. *Dunn v. U.S. Parole Commission*, 818 F.2d 742, 744 (10th Cir. 1987) ("So long as the petitioner names as respondent a person or entity with power to release him, there is no reason to avoid reaching the merits of his petition.") (quoting *Lee v. United States*, 501 F.2d

494, 502-03 (8th Cir. 1974) (Webster, J. concurring)). Here, while the warden is a proper respondent as the immediate custodian, so are the rest of the named Respondents.

The DHS Secretary, for example, possesses statutory authority to affect the detention and removal of noncitizen detainees, and thus, possesses legal authority over Mr. Mendoza. The Homeland Security Act of 2002 vested the DHS Secretary with the authority to carry out immigration enforcement functions "vested by statute, in, or performed by, the Commissioner of Immigration and Naturalization (or any officer,  employee, or component of the Immigration and Naturalization Service)" and among these duties is the authority to administer the detention and removal program. 6 U.S.C. §§ 202(3), 251(2); *see also Armentero I,* 340 F.3d 1058, 1072 (9th Cir. 2003), vacated on unrelated grounds by *Armentero v. INS,* 412 F.3d 1088, 1093 (9th Cir. 2005) (Armentero II).

The Attorney General is also a proper Respondent as he arguably possesses more authority than the DHS Secretary over noncitizens facing exclusion and deportation proceedings, like Mr. Mendoza. Pursuant to statutory power, the Attorney General possesses complete authority to detain noncitizens, order them deported, and grant or deny them discretionary relief. *See Prieto-Romero v. Clark,* 534 F.3d 1053, 1063 (9th Cir. 2008); s*ee also Somir v. US*, 354 F. Supp. 2d 215, 217-18 (E.D.N.Y. 2005) ("[T]he near total control exercised by the Attorney General over [noncitizens] facing exclusion and deportation proceedings makes the

Attorney General a custodian of these individuals within the meaning of the general habeas statute."). The overwhelming authority the Attorney General possesses to exercise discretion in matters related to noncitizen proceedings indicates that he is a proper respondent.

All the named respondents in this petition, including the Attorney General and the DHS Secretary, are proper respondents, such that the Court does not need to dismiss anyone.

### III.   CONCLUSION

Mr. Mendoza has been unreasonably detained for over 27 months without the opportunity to have an individualized hearing before a neutral arbiter. Contrary to Respondents' unsubstantiated contentions, federal courts have consistently held, Respondents have no authority to detain individuals for prolonged periods of time without any semblance of due process. Case law cited by Respondents confirms that Mr. Mendoza's habeas petition conforms to the traditional use of habeas.

Thus, Mr. Mendoza requests that the Court order his immediate release, or alternatively requests that the Court order Respondents to provide him with an individualized bond hearing.

//

//

1

Respectfully submitted,

2

Dated:   May 20, 2022

3

**AL OTRO LADO, INC.**

4

By: s/ *Priscilla Merida*

5

Priscilla Merida

6

*Pro Bono* Attorney for Hever Alberto
Mendoza Linares

7

Email: priscilla@alotrolado.org

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29